IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ANDREA GARCIA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:24-CV-01067-KK/DLM |
| § | |
| THE REGENTS OF THE UNIVERSITY § | |
| OF NEW MEXICO d/b/a The University § | |
| Of New Mexico Hospital, § | |
| § | |
| Defendant. § | |

**PLAINTIFF'S REPLY IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT ON SUCCESSOR IN INTEREST LIABILITY UNDER THE FAMILY AND MEDICAL LEAVE ACT**

**INTRODUCTION**

The facts supporting successor in interest liability are undisputed. UNMH admits it provided the same services to the same detainee population, at the same facility, using a workforce that was 100% comprised of former YesCare employees on the day of the transition. UNMH's purported factual disputes concern either immaterial matters or facts that actually reinforce continuity, such as its admission that retaining the YesCare workforce was "imperative." [ECF 61 at 23]. More importantly, UNMH's principal legal argument, that "notice" should weigh against liability, is foreclosed by the explicit language of case law and 29 C.F.R. §825.107, which exclude notice as a factor in the successor in interest analysis when applied to FMLA coverage. Because all material facts are undisputed and weigh in favor of successor liability, this Court should grant Plaintiff's Motion.

**I.   THE UNDISPUTED MATERIAL FACTS ESTABLISH CONTINUITY OF OPERATIONS AND SUCCESSOR IN INTEREST LIABILITY UNDER THE FMLA.**

Defendant does not dispute the following facts which, taken together, support a finding of successor liability under the applicable factors:

- **Same Services:** UNMH provided the same medical and mental health services to the same population of detainees. [ECF 55, UMF 32].

- **Same Workforce:** 100% of the employees working for UNMH on Day 1 of the transfer were former YesCare employees. [*Id.* at UMF 24, 26-29].

- **Same Job Functions:** Plaintiff's essential job functions remained the same. [*Id.* at UMF 34, 43].

- **Intent to Retain:** UNMH actively recruited YesCare staff to avoid a lapse in service. [*Id.* at UMF 22].

- **No Lapse:** Operations transitioned without a break in service. [*Id.* at UMF 32].

**II.   DEFENDANT'S "DISPUTES" OF PLAINTIFF'S UNDISPUTED MATERIAL FACTS ARE IMMATERIAL TO THE SUCCESSOR IN INTEREST ANALYSIS.**

Defendant presents contrived factual disputes which, when taken together, do not address the material issues under the successor in interest analysis.

- **UMFs 5, 8, 9, 10, and 11 (Nature of Contract):** Defendant disputes the characterization that the County "contracted out" services or that the HCA MDC (rather than the County on its own) "created" the PSA, insisting on the distinction of the Joint Powers Agreement (JPA). ECF 61 at 3-4. These distinctions are immaterial legal arguments. Defendant admits it executed the PSA to provide the exact services at MDC previously provided by YesCare. [ECF 55, Ex. 2].

- **UMFs 12, 14, and 15 (Equipment Ownership):** Defendant disputes the ownership of equipment, arguing it reverts to the County or HCA. [ECF 61 at 5-6]. However, it is undisputed that the *workforce* used the same equipment to perform the same jobs and that this equipment—whether purchased by the contracting entity or the contractee—would revert to the County. Moreover, there is no dispute that whatever the arrangement of the equipment, it is substantially the same as the prior contractor's arrangement with the County.

- **UMFs 35, 36, and 39 (FMLA Request):** Defendant disputes the timing and nature of Garcia's FMLA request. [ECF 61 at 7]. These facts are largely immaterial to the successor in interest analysis as stated in, *infra,* Sec. IV(A).

III.   **PLAINTIFF'S RESPONSE TO DEFENDANT'S ADDITIONAL MATERIAL FACTS.**

   A.   Undisputed.

   B.   Undisputed.

   C.   Undisputed. Bernalillo County turned to UNM to provide medical, dental, mental health, and psychiatric services at the MDC. *See,* [ECF No. 55, Ex. 2, UNMH_ID 28].

   D.   Undisputed.

   E.   Undisputed but the goal of the partnership is immaterial to the successor interest factors as set forth below.

   F.   Undisputed but immaterial to the successor in interest factors as set forth below. The undisputed facts show that UNMH's work *at MDC* was governed by the Professional Services Agreement (PSA) signed in July 18, 2025. It is undisputed

       that the PSA covers the same scope of work for employees at the MDC as prior contractors. *See* [ECF No. 55, UMF 11].

G.     Undisputed but the governance structure of the HCA MDC is immaterial to the relationship of the working conditions under the successor in interest test.

H.     Undisputed.

I.     Undisputed but immaterial.

J.     Undisputed.

K.     It is undisputed that the County handled these same obligations under its contract with YesCare prior to UNMH's takeover. The contract between YesCare and the County make clear that the County, not YesCare, were responsible for maintaining fixtures, premises in good working condition and with adequate security. The absence of those items from the Service Contract with YesCare which details YesCare's obligations just underscores that those obligations were the County's. [ECF No. 55, Ex. 4]. *See also* [ECF No. 55, UMF 17] (citing Ex. 3, 97:9-24).

L.     Undisputed. It is undisputed that the County had the ability to increase or decrease the staffing <u>minimum</u> with YesCare. [ECF No. 55, Ex. 4, A.Garcia 2967 (II(C))]. However, YesCare was still responsible for hiring and maintenance of staffing levels at or above the staffing minimum. *Id.* Under the UNMH PSA, UNMH also agreed to maintain a baseline of staffing as set forth by the MDC HCA. *Id.* Of course, the *McClendon* settlement, which is imposed on the County, is the main directive of staffing requirements. [ECF No. 55, Ex. 2, at UNMH_IDs-0030].

M.     Undisputed.

N.   Undisputed. It should also be noted that similar onboarding occurred in the previous handovers between contractors with the County for MDC medical services. [ECF 55, Ex. 17, 39:16-43:13.

O.   Undisputed.

P.   Undisputed.

Q.   Undisputed but immaterial. There is no case law that indicates that the successor in interest analysis requires looking at any period of time other than the handover of the contracting entities.

R.   Undisputed. This confirms the necessity of retaining the workforce and has been the case at MDC long before UNM took over. *See,* AUMF B.

S.   Undisputed.

T.   Undisputed.

U.   Undisputed but immaterial. Differences in administrative HR policies are material to the successor in interest analysis.

V.   Disputed and immaterial to the successor in interest analysis. *See,* [ECF 60, Pl's Resp to Def's MSJ, at AUMF W *and* Response to UMF 34].

W.   Disputed and immaterial to the successor in interest analysis. *See* [*Id*].

X.   Undisputed.

Y.   Undisputed.

Z.   Undisputed.

AA.   Disputed and immaterial. Garcia's relationship with supervisors is a factual dispute regarding the merits of her termination (outlined in Garcia's Response to

|     |     |
| --- | --- |
|     | Defendant's Motion for Summary Judgment [ECF 60]) but is irrelevant to the legal question of successor in interest liability. |
| BB. | Undisputed. This was also the arrangement between the County and YesCare. |
| CC. | UNM replaced the equipment but there is nothing in the deposition testimony cited that indicates that UNM would not be reimbursed and the equipment would still be considered the property of the County. [ECF No. 55, Ex. 2, at UNMH_IDs-0050; Mot. Ex. 3, at 93:16-22]. |
| DD. | Undisputed. Moreover, there is nothing in the record that indicates this was not the case between YesCare and the County in its contract. |
| EE. | Undisputed. Moreover, there is nothing in the record that indicates this was not the case between YesCare and the County in its contract. |
| FF. | Undisputed. |
| GG. | Undisputed that Garcia had not been *granted* leave by UNMH, but she had notified UNMH of the need for leave prior to UNMH's takeover. Garcia applied for intermittent leave around July 12, 2025. *See* [ECF 60, Pl's Resp to D's MSJ, ADMF K (citing A.Garcia_2850)]. Importantly, even though her intermittent leave was not approved until after the switchover, Defendant does not dispute that it did not consider the request for intermittent leave under its own policy for the same reasons that it did not consider honoring YesCare's prior approval of FMLA leave. Therefore, whether or not the intermittent leave was approved by the predecessor prior to July 26, 2023 does not affect the successor in interest analysis as stated below. |
| HH. | Undisputed, with the exception of Ms. Garcia. |

II. Undisputed.

JJ. Disputed but immaterial to the successor in interest analysis. *See* [ECF 60, Pl's Resp to Def's MSJ, at AUMF W and Response to UMF 34].

IV. **ARGUMENTS AND AUTHORITIES**

Defendant's response to Garcia's Motion further supports the proposition that the issue of successor in interest liability is a matter of law ripe for the Court's consideration as a matter of law and not suitable for a jury. The material facts—the timing of the transition, the composition of the workforce, and the nature of the services—are established by Defendant's own admissions. The only dispute is how the Court will weigh those facts under the FMLA successor in interest standard. Because all such undisputed facts weigh in favor of successor in interest liability under the FMLA, Garcia respectfully requests that the Court grant her motion.

 **A. The Parties Agree on the Legal Standard. However, Defendant's Emphasis on Notice as a Factor is Directly Contradicted by 29 C.F.R. §827.105 Under the FMLA.**

The parties largely agree on the applicable law to apply to the FMLA successor in interest analysis. Both parties agree that the FMLA adopts the "successor in interest" doctrine from federal labor law. [ECF 61 at 13-14]. Both parties agree that the multi-factor test derived from *Cobb v. Contract Transport, Inc.*, 452 F.3d 543 (6th Cir. 2006) is relevant to the FMLA question. However, Defendant ignores *Cobb's* clear direction regarding the difference between the analysis in the Title VII context and the analysis in the FMLA context which has been memorialized in the Department of Labor's regulatory language.

Defendant emphasizes an additional factor of "notice" to the other factors already addressed in Garcia's motion. Defendant relies on *Roark-Whitten* (a case decided under Title VII successor in interest jurisprudence) to argue that a successor cannot be liable if it lacks notice of

the claim in question. *Id.* at 15 (citing *EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136 (10th Cir. 2022)).

Defendant's emphasis on a notice factor in the successor in liability analysis and its import in this case is flawed legally and factually.

1. <u>Notice is explicitly prohibited as a factor in deciding whether an employee continues to be covered under the FMLA successor in interest analysis</u>.

Notice is the one area of the successor in interest liability analysis that makes sense in the context of a predecessor's violation of labor law but does not make sense under the FMLA where the predecessor has not been accused of any violation of law. As the Court in *Roark-Whitten* pointed out, the question of notice in a Title VII claim is raised because the question is whether the predecessor had <u>a violation</u> of law that occurred on its own time for which it should have provided relief. 28 F.4th at 148 (citing *Musikiwamba v. ESSI, Inc.,* 760 F.2d 740, 750 (7th Cir. 1985)).

Under the FMLA, "**[t]he regulations, however, clarify that, in contrast to Title VII, notice of an employees' FMLA claim should not be considered.**" *Cobb,* 452 F.3d at 551 (citing 29 C.F.R. §825.107) (emphasis added). Indeed, 29 C.F.R. §825.107(a) states unequivocally that notice is only relevant to whether a violation of the FMLA by a predecessor applies, not to whether an employee should be a covered employee under the FMLA with the successor.

This makes sense. In equity, as Defendant points out, a successor should be able to negotiate over whether there are outstanding liabilities (i.e. claims against them). However, the question of coverage does not have to do with any individual employee's claims against the predecessor; rather, it has to do with the rights of the entire workforce. Here, YesCare had no claims against it, so there is nothing to notify.

For example, whether employees are covered employees under the FMLA is not just relevant to employees who had prior FMLA approval by the predecessor. Indeed, if all former

YesCare employees are not covered under the FMLA on July 26, 2023, they all would have to accrue twelve months of employment and work 1250 hours in those twelve months before they are again covered under the FMLA. 29 U.S.C. § 2601(b)(2). None of the 68 employees who carried over from YesCare to UNM will be able to request FMLA from July 26, 2023 until July 26, 2024. Therefore, UNM's failure to consider itself a covered employer under the FMLA has long-standing effects on employees far beyond Ms. Garcia's approved FMLA which pre-dated the transition.

Therefore, the Court should follow the Department of Labor's explicit instruction not to consider notice when deciding whether successor in interest liability exists for FMLA coverage.

   2. <u>Even if notice were considered, it is undisputed that UNMH had notice of Garcia's prior FMLA approval before signing the PSA.</u>

Finally, while irrelevant for the reasons cited above, UNMH is simply incorrect in stating that UNMH did not have notice of Garcia's FMLA claim. The timeline is undisputed. Garcia mentioned that she was on FMLA leave to UNMH officials on June 27, 2023 and July 18, 2023. [ECF No. 60, AUMF G, L]. UNMH did not sign its PSA with the HCA MDC until July 19, 2023, and Garcia did not become an employee of UNMH until July 26, 2023. Therefore, Defendant had actual knowledge of the potential liability, and Garcia's statutory right to FMLA coverage, *before* it signed its contract with the HCA MDC and before it took over operations and became Garcia's employer. Therefore, even if notice is considered as a factor, it should weigh in favor of Garcia.

   B. **The Undisputed Facts Confirm Successor Liability Under the Applicable Factors.**

Defendant's arguments regarding the specific factors under 29 C.F.R. § 825.107 largely confirm, rather than rebut, continuity.

(1) <u>Substantial Continuity of the Same Business Operations.</u> Defendant attempts to distinguish its operations by arguing it has a "greater interest" in MDC as a partner in the HCA and that it brings "institutional expertise" that YesCare lacked. [ECF 61 at 17-18]. Defendant's argument misses the

*Plaintiff's Reply ISO of Partial Motion for Summary Judgment* - 9

point. The interest of UNMH in providing services at the MDC or its higher competency to do so are not factors in the successor in interest analysis. After all, one would expect that any contracting agency would switch out contracts with private companies on the basis that the new company will do a better job than the predecessor.

Instead, the successor in interest analysis is simply focused on what the business operations at the MDC looked like, on the ground. The question is whether there is "continuity in the employing industry." *Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 782 (9th Cir. 2010) (citing *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 182 n5 (1973)). It does not look to the intent or the proficiency of the contracting agencies or companies.

Indeed, Defendant argues that the inherent problems at the MDC in providing medical and mental health services was a reason to move those services from YesCare to UNMH. [ECF No. 61, p. 17-18]. However, as Defendant admits, those problems have been inherent throughout the last decades of services at the MDC. [*Id.* at 17]. That is why the County cycled through other contractors and, by its own terms, is why it terminated its contract with YesCare and decided to create the HCA MDC and contract with UNMH. Therefore, the desire to fix chronic problems in health and mental health care at the MDC only underscores that UNMH was brought in to provide (and hopefully improve) the same services as its predecessor to detainees in the MDC.

Looking to the substantial continuity factor, it is undisputed that UNMH provides the exact same "medical, dental, mental health, and psychiatric services" [ECF 55, UMF 11(a)] to the same 1,550 detainees [*Id.* at UMF 1, 32] at the same facility. UNMH even assumed YesCare's "backlog of labs" dating back to 2021 [*Id.* at UMF 18], proving that the operational workload was a seamless continuum from one provider to the next. That UNMH intended to "manage" these services better than YesCare does not change the fact that the business operation itself—treating detainees in the

same critical areas of services required under county policies and the *McClendon* agreement—remained identical. [ECF 61 at 17].

(2) Use of the Same Plant. Defendant admits this factor but argues without citation it should be afforded limited weight because using the MDC was a matter of "necessity" and it had "no discretion" as to where services took place. [ECF 61 at 18]. There is no legal support that this factor is unimportant because UNMH has to perform mental health services of detainees at the MDC. Indeed, Defendant's argument turns the successor doctrine on its head. "Necessity" is not a defense to successor liability; it is evidence of successor liability. The fact that the business *could not function* without using the same plant demonstrates the continuity of the enterprise. If the "plant" is so essential that the successor has no choice but to use it, the "employing industry" has clearly not changed. This factor should have equal weight as it would in any other industry. *See Cobb,* 452 at 557 (finding that the fact that successive government contractors have to deliver mail on the exact same route as dictated by U.S. Postal Service weighs in favor of successor liability).

(3) Continuity of the Workforce. Defendant admits that 100% of the employees working for UNMH on July 26, 2023, were former YesCare employees. UMF 26. Defendant argues, however, that it hired them out of "necessity" to avoid a lapse in care and to comply with the *McClendon* settlement. [ECF 61 at 19; AUMF S]. Garcia makes the same point. [ECF No. 55 at 14-15]. This supports a finding of continuity of the workforce. As with the "plant" factor, UNMH's admission that retaining the workforce was "imperative" [ECF 61 at 23] concedes that this factor also weighs in favor of continuity. When a successor retains a predecessor's workforce because the business cannot operate without them, that is precisely the situation that the successor in interest principle is meant to encompass.

> With respect to balancing the equities, the Sixth Circuit has taken a broad approach toward finding successorship. *Grace,* 521 F.3d at 672–75; *Cobb,* 452 F.3d at 556–

> 57. "A stated purpose of the FMLA is 'to entitle employees to take reasonable leave for medical reasons.' " *Cobb,* 452 F.3d at 556 (quoting 29 U.S.C. § 2601(b)(2)). When the eight factors listed in the DOL regulation support a finding of successorship, that important purpose is fulfilled. *Id.* at 556–57. Similarly, **a new employer who hires its employees from the old employer "benefit[s] from the stability and continuity created by the retention of long-term employees of its predecessor."** *Grace,* 521 F.3d at 674–75. The Sixth Circuit explained that congressional intent with respect to the 12–month waiting period was to exclude seasonal and temporary workers, not long-term employees whose former employer merely shifted form. *Id.* at 675. The federal policy of granting leave to long-term employees is fulfilled by a finding of successorship. *Id.*

*Sullivan,* 623 F.3d at 783 (emphasis added). Defendant's reference to employee attrition *after* the transition (AUMF Q) is irrelevant to the question of whether UNMH was a successor on the date of the transfer. This factor weighs in favor of successor in interest liability.

(4) <u>Similarity of Jobs and Working Conditions.</u> Defendant argues that "working conditions" changed because UNMH eliminated overtime pay, implemented a lottery for seniority, and changed scheduling notice requirements. [ECF 61 at 20]. This conflates human resources policies with the conditions of the actual work performed. The similarity of jobs factor looks to whether the employee is performing the same work. Defendant admits Garcia's job responsibilities were "substantially similar." *Id.* Garcia's essential functions—conducting mental health assessments and counseling detainees—remained identical. [ECF 55, UMF 43]. Administrative friction regarding scheduling protocols [ECF 60, AUMF U] or "We Care Behaviors" [*Id.* at AUMF W] does not alter the nature of the work performed. If Defendant's argument were accepted, any successor could avoid FMLA liability simply by unilaterally changing the employee handbook. *See, e.g.,* [ECF 61 at 20] ("…new employers will inevitably implement their own policies and procedures…"). The minimum requirements of the jobs available, the number of hours required to be covered, and the conditions of the location where they were performed were all standardized through the *McClendon* domains and the county policies at the MDC. [ECF 61, AUMF S]; [ECF 55, UMF 13]. This factor weighs heavily in support of successor liability.

(5) <u>Similarity of Supervisory Personnel.</u> Defendant focuses on the fact that UNMH hospital ultimately had different leaders at the officer-level. [ECF 61 at 20-21]. The undisputed facts show that the supervision at the facility—the supervisors who actually direct the daily work of the employees at the physical location—remained largely made up of former YesCare employees. Defendant retained the Director of Nursing (Denise Jones, [ECF 55, UMF 29]), the Director of Advanced Practice Providers (Brian Dietch, [*Id.*]), the Interim Behavioral Health Director (Mila Mansuram, [*Id.* at UMF 27]), and the Health Services Administrator (Michelle Boyer, [*Id.* at UMF 30]). Garcia does not dispute that these employees were then subordinates of other executive level positions at UNMH. [ECF 61]. But the supervision at the MDC was largely made up of YesCare employees.

Again, whether or not Garcia "had a contentious relationship with her supervisors at UNM" [ECF 61 at 21] is not relevant to the assessment of this factor—which is looking at the "employing industry," (*Sullivan,* 623 F.3d at 782) not just the employment of the plaintiff. At the working "plant" of the MDC, most of the main operational supervision remained the same. For the purposes of FMLA leave and daily working conditions, the retention of these YesCare supervisors at the facility weighs in favor of continuity.

(6) <u>Similarity in Machinery, Equipment, and Methods of Production.</u> Defendant argues it updated equipment because it was obsolete. [ECF 61 at 21]. No case law has been brought to the Court's attention, however, that upgrades of equipment (which are owned by the County) in a continuous operation weigh against successor liability. Again, Defendant admits that the upgrades were all reimbursed and retained by the County. This does not indicate a difference in employment and there is no evidence that this is any different than the arrangement the County had with YesCare previously. *See, e.g.,* [ECF 55, UMF 15-17]. UNMH admits it retained the IT equipment [*Id.* at

UMF 16] and that the security infrastructure at the detention center continued to be provided by the County [*Id.* at UMF 12, 17]. The fact that UNMH installed a new electronic medical record system, AUMF FF, is an administrative upgrade, not a fundamental change in the method of production, which remains the provision of clinical care to detainees. This factor continues to weigh in favor of successor liability.

(7) <u>Similarity of Products and Services.</u> Defendant admits the services (medical/mental health care) are the same but argues the "initial plans were a work in progress." [ECF 61 at 22]. This is vague and not founded in the successor liability analysis. The service provided to the customer (the County/Detainees) was identical as laid out in the two comparator service contracts. *See, e.g.,* [ECF 55, UMF 19].

(8) <u>Ability of the Predecessor to Provide Relief.</u> Defendant argues this factor is inapplicable because "the alleged violation at issue arose after YesCare ceased to provide services at MDC." [ECF 61 at 22]. Garcia agrees. Defendant's argument that this is inapplicable is *precisely* the reason that notice is an inappropriate factor. The successor in interest analysis for FMLA coverage is not a situation where a successor may or may not have had knowledge of a predecessor's potential legal claims. Neither notice nor this factor are applicable to questions of successor in interest liability for FMLA coverage questions. *See, supra,* IV(A).

    **C. The Balance of Equities Favors Garcia.**

Garcia has established that the federal policy and Garcia's interest in availing herself of federal labor protections to be available for caretaking to her ill parents weigh in favor of successor in interest liability. [ECF 55 at 16]. The policy interests are not "conflicting" but are consistently in favor of a finding of successor liability. [ECF 61 at 24].

Defendant argues the equities favor UNMH because it is a public entity trying to fix a broken system. [ECF 61 at 23]. Garcia agrees that UNMH was a better provider of health care at the MDC, but that has no bearing on whether it should comport with federal labor law. The "Balance of Equities" under *MacMillan* and *Cobb* weighs: the interests of the parties and the "national policies underlying the statute at issue" which calls for a "broad application" of provisions such as the FMLA. *Sullivan,* 623 F.3d at 782 (citing *Golden State Bottling,* 414 U.S. at 182 n5, and *Steinbach v. Hubbard,* 51 F.3d 843, 845 (9th Cir. 1995)).

Defendant argues that the equities weigh against liability because it could not "adjust the price" to take into account Garcia's approved leave. [ECF 61 at 15-16]. As stated above, this is immaterial and factually incorrect. *Supra* IV(A).

Defendant again states that Garcia had not been officially granted intermittent leave when UNM began operations. [ECF 61 at 23]. But this is a red herring. Again, even if her intermittent leave (which was requested in the first half of July 2023) was not approved until after the switchover, Defendant does not dispute that it did not consider the request for intermittent leave under its own policy for the same reason that it did not consider honoring YesCare's prior approval of FMLA leave. That reason is that it believed that successor in interest liability did not apply and, therefore, Garcia and every other former YesCare employee would not be covered under the FMLA for another year. [ECF 55, UMF 38]. Therefore, whether or not the intermittent leave was approved by the predecessor prior to July 26, 2023 does not affect the successor in interest analysis.

The equities, as set forth in federal labor law doctrines that are to be interpreted broadly, weigh in favor of successor in interest liability.

## **CONCLUSION**

*Plaintiff's Reply ISO of Partial Motion for Summary Judgment* - 15

Defendant admits it took over medical services at the MDC facility which were previously performed by a prior contractor, 100% of its workforce at the time of changeover at the MDC were employees of the prior contractor, and Defendant continued the exact same services without a lapse. It admits it knew of Garcia's FMLA request before it took over operations. The successor in interest factors and balancing of the equities should be decided this Court on the undisputed facts. The relevant factors favor the employee who remained at her post while the name on the door changed. Garcia respectfully requests this Court grant her Motion.

        Respectfully submitted,

BENOIT LEGAL, PLLC
311 Montana, Suite B
Law Center
El Paso, Texas 79902
(915)532-5544

*/s/ Christopher Benoit*
Christopher Benoit
NM Bar No. 150497
chris@coylefirm.com

and

James A. Ray
ANDY RAY LAW, LLC
P.O. Box 640
Tijeras, New Mexico 87059
(505) 847-3300
andy@andyraylaw.com

CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record, as reflected more fully on the Notice of Electronic Filing (NEF).

*/s/ Christopher Benoit*
Christopher Benoit